Rapallo, J.
The only question arising upon the present appeal, which is re viewable in this court, is whether or not the court below had power to grant the application of the defendant. If it possessed that power, and under the mistaken impression that the power did not exist, denied the application on that ground, we have jurisdiction and it is our duty to correct that error of law, and remit the case to the court below, with a direction that the motion be heard, at Special Term upon the merits. (People v. N. Y. Central R. R. Co., 29 N. Y., 418; Brown v. Brown.*)
*181 This is the extent to which we interfere with orders made upon application which do not rest upon strict legal right but involve an exercise of discretion on the part of the courts below.
It is not contended on the part of the appellant, and it would have been useless to contend, that the present application was founded upon legal right, or that it did not rest in the discretion of the court, nor that if the order appealed from was the result of a fair exercise of that discretion we should be asked to review it. The ground of the appeal is that the judge to whom the application was originally made at Special Term decided that he had no power to grant the relief sought, and that he erroneously held that such relief could have been granted and should have been applied for under section 160 of the Code of Procedure, and could be obtained by no other proceeding, and that the defendant is entitled to have this error of law corrected and his application duly considered without being embarrassed by the legal difficulties supposed to stand in its way.
The first point for our consideration is, whether in fact the case was disposed of in the court below on the question of power. If it was, we are then called upon to decide whether or not the power existed, and if we find that it did, the • defendant is entitled to the unembarrassed exercise of the discretion of the court in which his cause is pending, upon' the question whether or not justice demands that his application be granted.
The best evidence on the first point is the order of the court denying the defendant’s motion. This order recites, among other things, that an order had been granted requiring the plaintiff to show cause why he should not deliver to the defendant’s attorneys “ a statement in writing of the particular times and places at which ■ he expects or intends to prove that any acts of adultery or criminal intercourse took place between the defendant and the wife of the plaintiff.” It denies the motion “ on the ground that the court had no power to grant the same, and on the other grounds stated.”
*182 If the words “ and on the other grounds stated ” had been omitted, it is very clear that the order would conclusively establish that the motion was denied solely on the ground of a supposed want of power to grant it. What qualification, then, was intended by the insertion of these words ?
We must suppose that the learned judge referred to the grounds stated by himself in the opinion which he delivered cotemporaneously with the order, and in which he set forth the reasons for his decision. Any other supposition would be unreasonable.
This opinion presents with much force the reasons for holding that he had no power to grant the motion. But in no part of it does-he say that he has exercised his discretion as to the merits of the application and determined that it should be denied upon the merits.
The learned judge after commenting on the subject of bills of particulars in actions of tort, and showing that ordinarily they will not be granted in that class of actions, says: “ But, as I have said, the question is as to the power of the court,” and he proceeds to sustain his position that the court has no such power by arguing that the defendant could have obtained an adequate remedy by a motion under section 160 of the Code to make the complaint more definite and certain, and that that was the appropriate and sole remedy.
After a careful examination of the opinion we are satisfied that it does not in any substantial respect qualify the statement in the order, that the motion was denied on the ground of want of power, and that the other grounds stated ” are that a different remedy is provided by the Code and the party is confined to the one thus provided.
This being the shape in which the case comes before us we think that it presents a question of law and is therefore appealable to this court.
It may not be absolutely essential to consider the question, whether the particulars sought could have been obtained under section 160, by an application to make the complaint more definite and certain. If the power to order particulars *183 existed before the enactment of that section, it is not thereby abrogated; the most that could be said upon the subject is that, if section 160 affords an appropriate remedy the court might require the party to resort to that remedy. Both remedies might consistently exist together. But so much stress has been laid on the assertion that a remedy could have been obtained under section 160 that it is proper to ascertain whether or not that position is sound.
The language of the section is: “ When the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defence is not apparent, the court may require the pleading to be made definite and certain.”
It will be observed that it is only where the precise nature of the charge is not apparent that an application can be made under this section. It enables a party to obtain a definite statement in the pleading of the natwre of the charge intended to be made against him, but not of the particulars or circumstances of time and place. For this purpose a different proceeding is pointed out, viz., an application under section 158, which provides among other things that “ the court may in all cases order a bill of particulars of the claim of either party to be furnished.”
It is evident that in the present case there was no occasion for an application under section 160 to make the complaint more definite and certain. There is no uncertainty or indefiniteness in respect to the nature of the charge made against the defendant. The difficulty under which he claims to be laboring is' that the complaint does not point out the times or occasions when the alleged offences are claimed to have
been committed, but avers simply that they were committed “ on the 10th of October, 1868, and on divers other days and times after that day and before the commencement of this action,” thus covering a period of very nearly six years, the action having been commenced in August, 1874. He denies that the acts charged were ever committed, but claims that for the purpose of preparing his defence it is necessary that he should be furnished with the particulars of time and place, *184 in order that he may summon witnesses to rebut such evidence as may be brought against him, or explain the circumstances which may be proved and upon which the plaintiff may rely to establish the charge.
In actions upon money demands consisting of various items, a bill of particulars of the dates and description of the transactions out of which the indebtedness is claimed to have arisen, is granted almost as a matter of course, and this proceeding is so common and familiar, that when a bill of particulars is spoken of, it is ordinarily understood as referring to particulars of that character. But it is an error to suppose that bills of particulars are confined to actions involving an account, or to actions for the recovery of money demands arising upon contract. A bill of particulars is appropriate in all descriptions of actions where the circumstances are such that justice demands that a party should be apprised of the matters for which he is to be put for trial with greater particularity than is required by the rules of pleading. They have been ordered in actions of libel; escape (Davies v. Chapman, 6 Ad. & El., 767; 7 D. & R., 774); trespass (Johnson v. Birley, 5 B. & A., 540); trover (Humphrey v. Cottleyou, 4 Cow., 54), and in ejectment (Vischer v. Conant, 4 Cow., 396). Even in criminal cases the instances in which the courts have, by analogy to the practice in civil actions, ordered bills of particulars, are frequent, viz.: On an indictment for being a common barrator, where a general form of pleading-is allowed. (Hawkins’ P. C., B. 1, chap. 83, § 13 ; Goddard v. Smith, 6 Mod., 261; Commonwealth v. Davis, 11 Pick., 432.) On an indictment for nuisance the prosecutor has been required to specify particulars of the separate acts of nuisance which he intended to prove (Rex v. Curwood, 3 Ad. & El., 815; Regina v. Flower, 3 Jur., 558), and in a prosecution for embezzlement (Rex v. Hodgson, 3 Carr & P., 422; Rex v. Bootyman, 5 id., 300); and in England there is nothing more common at the present day than to order particulars to be filed in an action for divorce, either on the ground of cruelty or adultery; and this is done.on the appli *185 cation either of the defendant, or, in cases where the wife is defendant, of the person with whom she is alleged to have committed adultery, and who under the Statute of 20 and 21 Victoria, chapter 85, is joined with her as co-respondent for the purpose of being mulcted in damages. These cases show very clearly the opinion of the English courts that a bill of particulars can be ordered in an action for orim. con., because section 33 of the statute last referred to expressly provides that where the alleged adulterer is named in the petition as co-respondent “ the claim made by every such petition shall be heard and tried on the same principles, in the same manner, and subject to the same or the like rules and regulations as actions for criminal conversation arc now tried and decided in courts of common law.” Under this provision particulars have been ordered on the application of the co-respondent, as well as of the respondent. (Higgs v. Higgs, 11 Week. R., 154; and see Hunt v. Hunt and Duke, 2 Swab. & Trist., 574.) The cases in which the complainant has been required to furnish particulars on the application of the respondent are too numerous to justify their citation here. There are nearly a dozen in volumes 2 and 3 of Swabey & Tristram’s Probate and Divorce Court Reports, which we have examined, and a similar order was made by the Supreme Court of Massachusetts, in 1834, in the case of Adams v. Adams (16 Pick., 254).
In this State Chancellor Walworth, in the case of Wood v. Wood (2 Paige, 108), laid down the rules which' have since governed in actions between husband and wife for divorce, and rendered applications for bills of particulars unnecessary. It must be remembered that here, when the charge of adultery is denied, the issue must be tried by jury unless the parties consent to a different mode of trial, and it is even doubtful whether they should be permitted so to consent. But in a contested case the chancellor laid down the rule as follows: “ The only safe and prudent course is to require the charge, whether of crimination or recrimination, to be stated in the pleadings and in the issues in such a manner *186 that, the adverse party may be prepared to meet it on the trial. If the persons with whom the adultery was committed are known, they must be named in the defendant’s answer, and the adultery must be charged with reasonable certainty as to time and place. If they are unknown, that fact should be stated in the answer and in the issue, and .the time, place and circumstances under which the adultery was committed should be set forth. Neither party has a right to make such a charge against the other on mere suspicion, relying upon being able to fish up testimony before the trial to support the allegation.”
The chancellor here speaks of setting forth the particulars in the answer, because the case then before him was one of recrimination.
In the case of The Commonwealth v. Snelling (15 Pick., 321), Ch. J. Shaw gave a very thorough examination to the subject of the practice of the courts' of common law in requiring bills of particulars, and the principle upon which it is founded, and after an extensive review of the authorities, came to the conclusion that the general rule to be extracted from them was, that where, in the course of a suit, from any cause a party was placed in such a situation that justice could not be done at the trial without the aid of tlie information to be obtained by means of a specification or bill of particulars, the court, in virtue of its general authority to regulate the conduct of trials, had power to direct such information to be seasonably furnished. The authorities, cited by him are decisions in civil cases, but by analogy he applied the principle to a criminal prosecution for libel, and sustained an order requiring the prisoner to furnish particulars of his justification of a general libellous charge against a magistrate.
The same rule is laid down in a recent case in the Court of Queen’s Bench, in Ireland (Early v. Smith, 12 Irish Com. L., appendix 35), where it was held, and on the authority of many of the same decisions which are cited by Oh. J. Shaw, that the rule which governs the courts in ordering particulars to be given is, “ that in all cases, whether in trespass; *187 trover or on the case, the court lias a general superintending power and control, no matter what the form of the action may he. If the plaint or declaration is conceived in vague and general terms, without specifying the circumstances under or the occasions on which the plaintiff relies, and the defendant satisfies the court by affidavit, that either for the purpose of pleading or of defence at the trial it is necessary that the plaintiff be more specific and more clearly define his cause of action, the court has a general jurisdiction to order the plaintiff to give a more precise and specific description of that upon which lie relies.”
In the case last cited a bill of particulars was ordered in a case of oral slander. Although no precedent could be found for an order for particulars in such a case, the court determined that the circumstances presented to them brought the case, by analogy, within the reasons of those in which particulars had been ordered, and that therefore they were authorized to afford the relief required.
A reference to a few of the authorities upon which these decisions were founded will show that in almost every kind of case in which the defendant can satisfy the court that it is necessary to a fair trial that he should be apprised beforehand of the particulars of the charge which he is expected to meet, the court has authority to compel the adverse party to specify those particulars so far as in his power. For instance, in Doe v. Philips (6 T. R., 597) an action of ejectment was brought. It was made to appear to the court that the action was founded upon the alleged forfeiture of the term of a lease by the breach of covenants contained in the lease. The court ordered the plaintiff to furnish particulars of the covenants, of the breaches, of the times when, etc., he meant to insist that the defendant had forfeited the lease. To the same effect was the case of Doe v. Broad (2 Man. & Gr., 523). So in Davies v. Chapman (6 Ad. & El., 767), it was held, that in an action for an escape the plaintiff might properly be ordered by a judge to give a particular of the alleged escape, specifying the time and place, and that the plaintiff was *188 bound to" specify them precisely, .if he could, and if not as well as he "was able. Analogous cases are to be found throughout the books. In this State it was long since recognized that in actions of ejectment to ascertain the precise premises for which the plaintiff was proceeding, the constant course was to obtain a bill of particulars. (Vischer v. Conant, 4 Cow., 396.) And so in actions of trover (Humphrey v. Cottleyou, 4 Cow., 54). As I have already shown, there is no class of cases in which in England, even at the present day, it is more common to order particulars to be furnished than in actions in which adultery is charged. If the charge is general and vague, particulars are always ordered. As early as the year 1692, in the case of the proceedings for divorce against the Duchess of Norfolk, before the House of Lords, of England (reported in 8 Hargrave’s State Trials, 35, and Howell’s State Trials, volume 12, page 833), the duchess demanded particulars of the charge against her. They were ordered. The -complainant furnished a statement that the person charged to commit the crime with his duchess was John Germaine of, etc., and that the times were between the months of June and December, 1685, and several times sinee, specifying places. The petition of her husband was presented in 1692. To this charge, covering six years, she answered that the charge as to time and place was too general and did not answer the* end of the order of the House of Lords. A further and more definite bill of particulars was then furnished, affording the complainant an extensive field for proof, but at the same time indicating to the defendant the periods and occasions, in respect to which she was called upon to defend herself.
Without following the line of English decisions, I come at once to those of our own country. In Pennsylvania, as early as 1784, in the case of Steele v. Steele (1 Dall., 409), after issue joined in an action for a divorce for cruelty, the court held that notice ought to be given of the facts intended to be proyen under the general allegations of the libel. In 1805, in Garrat v. Garrat (4 Yeates, 244), the libel .charged that *189 the respondent, “on the 10th of June, 1799, at the county aforesaid, and at other times and ¡places, committed adultery with Esther Palmer and other lewd women to the plaintiff unknown;” and the court held that unless the complainant, before trial, specified, in a written notice, the times and places and attendant circumstances, she should be confined in the evidence to acts of adultery committed with Esther Palmer. In Massachusetts, in 1834, in the case of Adams v. Adams (16 Pick., 254), the libel for divorce charged acts of adultery generally, and a bill of particulars was ordered.
Most of the authorities which I have mentioned consist of adjudications prior to the amendment of 1849 to section 158 of the Code of Procedure, which is in these words: “ And the court may, in all cases, order a bill of particulars of the claim of either party to be furnished.”
It must be borne in mind that we are now discussing simply a question of-power, whether, in the case before us, the court below had power to order particulars to be furnished; not whether, upon the facts disclosed by the affidavits, the court below ought or ought not to have ordered particulars, but whether it had thq power so to do. If it made a mistake in that respect we must correct it.
If the Code had been silent upon the subject of bills of particulars, the four hundred and sixty-ninth section would probably have sufficed to preserve the authority of the court to order particulars in all cases before accustomed. But the express authority conferred by section 158 to order particulars in all cases, especially when read in view of the cases which have been cited, and in which particulars had been ordered, would seem to place the question beyond doubt.
Many of the arguments on the part of the plaintiff are more proper to be addressed to the court of original jurisdiction, on the question of the exercise of its discretion, than to this tribunal. It is claimed that an important element in the plaintiff’s case consists of confessions made by the defendant, and that, if particulars are ordered, it will be necessary to prove that he confessed the acts to have been committed at *190 the dates specified in the hill of particulars. This is an imaginary difficulty. It would be absurd to suppose that any tribunal, of ordinary intelligence, would order a bill of particulars in such form as to exclude evidence of general confessions. The same argument was used in the case of Codrington v. Xodringion and Andrews (2 Swab. & Trist., 368). After an order for particulars had been granted, the complainant delivered particulars, in which he alleged that the respondent had committed frequent acts of adultery between 1859 and 1862, with one Lieutenant Mildmay, at Malta, and during a journey in Switzerland, Savoy, Sardinia and Italy. Application was made for further particulars, and, it appearing that the charge was founded upon the contents of a diary and letters of the respondent, which had come to the petitioner’s hands, it was ordered that, unless the petitioner gave further particulars, he should be confined in his proof to the confessions contained in the diary and letters. It is further urged that the defendant in such a case needs no specification of particulars, because he knows better than any other, but one, the details about which he seeks information. This is petitio jprincvpii. It assumes that the defendant has committed the acts with which he is charged, while the very question to be tried is, whether or not he has committed them. A further argument is that, to make the disclosure sought, will afford thfe defendant an opportunity to tamper with the plaintiff’s witnesses. This argument has been used in many of the eases to which I have referred, and has been uniformly rejected. The principle upon which orders for particulars are granted, is the advancement of justice and the preventing of surprise at the trial. The court must see that both parties are fairly dealt with, and it cannot be presumed that it will make any order which shall shield the defendant from just responsibility. Whether in the exercise of its discretion it should grant or refuse the order applied for, we are not to decide. All that we decide is, that it has the power, if it sees fit, to order particulars to be furnished, and *191 that in deciding that it had not such power, it committed an error at law, which requires us to reverse its decision.
A point is made, on the part of the plaintiff, which requires notice. It is contended that the General Term, in affirming the order of the Special Term, must be presumed to have passed upon the merits on the facts, as well as upon the law of the case, and the decision in Tracy v. Altmyer (46 N. Y., 598), is cited in support of this point. The answer is, that in the present case it appears that the order of the Special Term was reviewed by only two judges of the court. That they were divided in opinion, and that it was only by force of the statute specially applicable to the City Court of Brooklyn (Laws of 1870, p. 1047, § 6), that the order stood as affirmed, the two judges disagreeing.
Our conclusion is, that the orders of the Special and General Terms of the City Court of Brooklyn be reversed, without costs, and the case remitted, to be heard at Special Term, that its discretion may be exercised upon the merits.

 58 N. Y., 609.