Pitshke, J. (concurring).
—The complaint herein, as amended, states a cause óf action to recover fifty dollars which one Emily Guión (plaintiff’s assignor) deposited with defendant, the proprietor of a “Matrimonial Agency,” as a consideration for his services to work for her by introducing to her a number of gentlemen for the purpose of procuring her a husband satisfactory to her; and which amount was to be repaid unto her August 15, 1887, if at that time she was willing to give up all acquaintance with the gentlemen introduced. But if she should marry one of such gentlemen, an additional fifty dollars was due to the defendant. The arrangement was in writing, in form of a mutual due bill, setting forth the above terms.
On August 16 or 17, 1887, not having become suited, said Mrs. Guión demanded the fifty dollars from defendant; but the latter refused to return her the same, though she was willing to give up all acquaintances. The answer denied she or plaintiff was entitled to any recovery.
This is the whole issue before the court, so far as appears from the appeal book.
*408 In the court below, the trial judge directed a verdict for the defendant, on the ground that the transaction was against public policy, and plaintiff could, therefore, not have a restoration of the said money, so placed with the defendant.
There is, of course, no element in this case of either fraud, deceit, imposition or misrepresentation, on defendant’s part, to induce said Emily Guión to enter into the contract and make said deposit, nor is it asserted that she was ignorant of the meaning of the arrangement and her position therein.
First. Mrs. Guión having parted with her money without consideration, it still belongs to her (Hoag v. Owen, 57 N. Y., 644), unless the illegality of the agreement in question prevents a recovery by her. And this is applicable to her assignee, the plaintiff.
It is beyond dispute that in cases of illegal agreement, courts neither aid the parties to enforce the same, nor, if already executed, afford relief to either party thereto, where the parties are in “pari delicto.” These two legal propositions are well established by the authorities. Therefore, Crawford v. Russell (62 Barb., 100), the only reported case in this state on the subject of marriage-brokage) was correctly decided, as it was an action on and to enforce a marriage-brokage contract, i. e., to recover the agreed compensation; and the broker was properly defeated. To same effect, that such contracts are not enforceable, Johnson v. Hunt, 81 Ky., 321.
Second. However, the present suit is different. It is not an action founded on the legal agreement and in affirmance thereof, where the object is to enforce the performance of the illegal contract, but the action was brought in disaffirmance of the contract; and secondly, as no “husband ” had been procured when this suit was begun, and the money then remained in defendant’s hands, the marriage-brokage agreement was then yet executory and unexecuted, and clearly the parties to the arrangement (through particeps criminis) were not in “pari delicto.” Defendant was the conductor of the objectionable “agency,” while Mrs. Emily Guión, instead of being a transgressor, was rather the victim— compared with the situation of the defendant in the affair, by reason of the mischievous consequences, and woes likely to befall her therefrom.
There is a plain distinction between executory and executed illegal contracts. Where money has been paid on an illegal contract which has been executed and both the parties are in pari delicto, neither of them can recover the money so paid; but if the contract (not malum 'in se) is executory and the party paying the money is desirous of rescind *409 ing the contract, he may do so and recover back' his money by action of assumpsit for money had and received, as the purpose is not to affirm and enforce the illegal contract but the action proceeds in disaffirmance of such contract, on the ground it is void, and seeks to prevent the defendant from retaining the benefit he has derived thereby. Utica Ins. Co. v. Kip, 8 Cow. R., 24 (citing Munt v. Stokes, 4 Term. Rep., 561, 564, Buller, J., “that where the original contract was not malum, in se, suit lies to recover the money back); Boynton v. Hubbard, 7 Mass., 118; Chitty on Cont’s, 657; so in Walker v. Chapman (cited in Lowry v. Burdieu, 2 Doug. R., 471), where a sum of money was paid to procure a place in the “ Customs ” and the place had not been procured, and the party who paid the money having brought suit to recover back, etc., Held, he should recover because the contract remained executory.
Third. In respect to illegal acts involving any moral delinquency or turpitude, all parties are deemed equally guilty, and courts then will not inquire into their relative guilt. But where the offense is merely malum prohibitum, and is in no respect immoral or malum in se, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrong doers. Lowell v. Boston and L. R. R., 23 Pick., 24; Atlas Bank v. National Bank, 3 Metc., 581. Accordingly, a deposit under an illegal agreement, contrary to the statute, may be recovered back. White v. Franklin Bank (22 Pick., 181),. which is a case certainly analgous to the present suit.
Fourth. Where a party to an illegal transaction, though a particeps criminis, is not in “pari delicto,” he may have affirmative relief. Browning v. Morris, Cowp. R., 790, per Lord Mansfield (explaining also distinction between contracts malum in se, and those malum prohibitum merely).
If the parties to a contract or transaction, not malum in se, but simply malum prohibitum, are not equally guilty, courts afford relief to the less guilty party. To shield the more guilty party, and deprive the complainant of all remedy, it is essential not only that the latter be a particeps criminis, but he must be in “pari delicto ” with his adversary.
The authorities have clearly established that where there are degrees of wrong, courts can and do give relief against the more guilty party. Excise Comrs. v. Backus, 29 How. Pr., 39.
“Courts, both of law and equity, have held that two parties may concur in an illegal act, without being in all *410 respects in pari delicto.” Osborn v. Williams, 18 Vesey, 379 (where a restoration and accounting was decreed).
The parties, though in delicto, must also stand in pari delicto, to prevent the restoration or refunding of the fruit of the transaction. ■
So in Ford v. Harrington (16 N.Y., 285),where the plaintiff conveyed to attorneys his lands for the purpose of defrauding his creditors, and though the transaction was illegal and intentionally fraudulent, and plaintiff participated in the unlawful scheme, held he was in delicto, but not in pari delicto, and he, therefore, could recover. To same effect Freelove v. Cole (41 Barb., 318), where the same doctrine was applied for the relief of a fraudulent grantor, conveying to defraud creditors.
To the like effect is Winter v. Kinney (1 N. Y., 365), where it was held, a case of deposit under illegal agreement with sheriff to let prisoner go at large, that the money could be recovered back from the depositary. Also, Jacques, v. Golightly, (2 Wm. Bl. R., 1073). , For the same reason, as defendant herein was the more guilty in the light of public policy, and Mrs. Emily Guión (though particeps criminis) was evidently not in pari delicto, but at most a possible or probable victim, the plaintiff in the present suit has, upon principle, a perfect right to reclaim the money passed under the agreement herein.
The distinction is this: there are illegal contracts where both parties are equally culpable, and those in which, although both have participated in the illegal transaction, the guilt rests mainly with one. Unless the parties are in pari delicto, as well as particeps criminis, the courts—although the contract be illegal—will afford relief where equity requires it in favor of the more innocent party. The cases where courts give relief to one of the parties on the ground of not being in pari delicto, form a class entirely distinct from the cases which rest on a disaffirmance of a contract before it is executed. And it is essential to both classes that the contract be merely malum prohibition; if malum in se, the courts will, in no case, interfere to relieve either party from any of its consequences. Tracy v. Talmage (14 N.Y., 162, 181.)
The foregoing statement of the law in 14 N. Y., 181, requires a refunding, unto the plaintiff herein, of the money sued for in the present case, for two reasons, because plaintiff disaffirms herein the agreement before it was wholly executed, and because it is but malum prohibitum, and Mrs. Guión was not in pari delicto.
On the same doctrine of “ not in pari delicto ”—in cases of money lost by or deposited on an illegal wager (2 Comyn on Oontracts, 309; 6 Barb., 658), or expended in a lottery-scheme, or overpaid by way of usury, a restoration thereof through an action for money improperly “ had and re *411 ceived,” was always allowed for the protection of society, because the law regarded the payer as the principal offender —independent of and previous to any statutory provision authorizing such a recovery. So, the usurious interest on a loan-contract could be recovered back, independently of and before the statute, because parties not in pari delicto. Wheaton v. Hibbard, 20 Johns. Rep., 290, and, see 16 N. Y., 290; Bosanquet v. Dashwood, Cas. Tem. Talb., 38.
Again, in Mount v. Waite (7 Johns. Rep., 440), plaintiff was allowed to recover back a premium paid under a foreign lottery-scheme, against which there was no statute; and Kent, Ch. J. (who delivered opinion of court on the appeal), placed it on the ground, that as no statute was violated and the contract was not malum, in se, and the plaintiff (not being in delicto at all), was not “ in pari delicto,” said premium must be refunded. Recognized in 14 N. Y., 186 (supra.)
Fifth. From the foregoing discussion, it necessarily follows, that contracts for procuring a “marriage” {malum, prohibitum, -from their general disastrous consequences), are relievable against, and payments thereunder can be recovered back. That such is the law in “marriage-brocage cases,” has been long established in England, and prior to our declaration of independence, by the following authorities: Hall v. Potter (3 Lev., 411), where T. gave bond to P. to pay him £500, within three months after he should be married to the Lady Ogle, etc., and a bill in chancery was brought by T.’s executors, suggesting that the contract was void, as being for procuring marriage, though no circumvention or fraud to induce the contract appeared in the case, and there was nothing but advice, and the master of the rolls dismissed plaintiff’s bill; whereupon, on appeal to house of lords, it was held, all such contracts are of dangerous consequence, and the decree of dismissal below was reversed, and the brocage-bond decreed to be canceled.
In Smith v. Bruning (2 Vern., 392, and S. C., in Abr. Eq. Cases, 89, 90, as Goldsmith v. Bruning), where a note was given for £-, to A. to use her endeavors to procure and bring about a certain match, etc., the note was set aside, and the money already actually paid thereunder was ordered to be refunded.
To same effect, Stribblehill v. Brett (2 Vern., 446, and Chanc. Prec., 165). Again, Keat v. Allen (2 Vern., 588, and Chanc. Prec., 267 Anon), where C. courted B., who had certain “personalty,” and to get consent of A. (Lady B.’s father), 0. gave to A., the father, a bond to repay £200, if the wife should die without issue, or the issue died before respectively eighteen,—held, per Lord Cowper, it is *412 in nature of a brocage-bond, and - decreed that it be delivered up and defendant A. to Refund what, under the bond, had been paid him for interest.
Sixth. The form in which the present suit was brought was proper. Where money has been received, which, in equity, belonged to another, an action at law for “money had and received” will lie for its recovery. Cope v. Wheeler, 41 N. Y., 308.
The appropriate remedy in this court for plaintiff Duval, to recover back the fifty dollars in suit herein, was accordingly an action for money had and received, which is an action for money only. Sections 315, 3339, Code Civ. Pro.
On the whole, I believe it is necessary for the better maintenance of the law, to permit this action—for no man will readily venture to take, if he knows he is liable to refund. To decide that this action cannot be successfully maintained, would be to secure to defendant the fruit of an illegal transaction, at the expense of the more innocent party. To bar a recovery herein would be establishing a dangerous precedent, and would encourage the institution of such “matrimonial agencies” and the getting such contracts furishing them moneys paid or deposited, while they on their side incur no liability or risk—as their unlawful services cannot be “demanded,” nor could they be sued in damages for non-performance of the illegal contract.
A new trial should, therefore, be granted; on such new trial, interest will, however, not be recoverable, inasmuch as.the money was paid without any extortion or imposition to get it, and Mrs. Guión joined in the illegal transaction. Pease v. Barber, 3 Caines R., 266.
For the reasons above given, the judgment directed in favor of defendant must be reversed, and a new trial orderéd, with costs to abide the event.